THE PEOPLE OF THE ' STATE .OF ' NEW YORK ex rel. LAWRENCE DELEY, Appellant, v. STEPHEN B. FRENCH and Others, as Police Commissioners, Respondents.,

*Dismissal from the New York police force — intoxication, induced by medicine prescribed for sickness, not an excuse.*

On the return to a writ of *certiorari* issued to review the action of the New York police board, in the matter of the relator's dismissal from the New York police force, it appeared that he was absent from his post sitting at a table in a restaurant asleep, with his hat and coat off, under the influence of liquor; that this condition was induced by his having taken brandy and ginger and a tincture of opium, by direction of a physician, to relieve him from a cold from which he was suffering, and his having, subsequently to the taking of the first dose, not feeling well, drank from each of two bottles, containing such remedies, what he supposed to be a proper dose, and his having, in fact, taken an amount, which produced unconsciousness:

*Held*, that, assuming the existence of an ailment on the part of the relator, it. afforded no justification for his conduct.

That the facts presented a question, the decision of which rested wholly with the police commissioners, and that the General Term was not authorized, under the circumstances, to set aside the decision of the commissioners as being against the weight of evidence.

*People ex rel. Michael Brady* v. *French* (11 St. Rep., 577) not followed; *People ex rel. Masterson* v. *French* (110 N. Y. 645) followed.

. Certiorari to review the relator's dismissal from the police force issued under an order of the New York Special Term of the Supreme Court of June 15, 1888.

*John M. Tierney*, for the relator.

*William L. Turner*, for the respondents.

Brady, J.:

The charge against the relator was neglect of duty and conduct unbecoming an officer. The specifications were that he was absent from his post in a restaurant in this city, sitting at a table asleep, with his hat and coat off, and was so much under the influence of liquor that it was necessary to take him to the eighteenth precinct station house, which was done by a sergeant and a roundsman. The evi-

dence was abundant to establish that the relator was in a condition indicating intoxication, and, it may be briefly said, establishing the charge made and the truth of the specifications stated. The answer of the relator to the charge was that whilst on duty he was suffering from dirarrhea, and so much so that he was compelled to go to the nearest drug store for relief, getting a man in the meantime to cover his post. He met Dr. Hilton in the drug store, who examined him, and found he was suffering from cold, and who, in the exercise of his judgment, having made an examination, determined that he would be benefited by a stimulant and narcotic. He consequently prescribed brandy and ginger and a tincture of opium, directing the relator to take a tablespoonful of the brandy and ginger and twenty-five drops of the tincture of opium until relieved, and if the first dose, which was administered by the doctor in the drug store, did not relieve him, to repeat the dose. The relator then returned to his post which he had left in charge of a person. The pain still continuing the relator took another dose, and not having anything to measure it drank from each of the bottles what he thought was a dose, and took, it is supposed, too much of the opium and lost consciousness. It should be remarked here that there is no evidence in the case of his having imbibed anything other than the medicine prescribed. Dr. Theodore Hilton corroborated the story told by the relator, stating that he saw him in the drug store, prescribed the brandy and ginger and tincture of opium, and administered one dose himself. And he further said, "I suppose he took too much of the opium or the brandy and that produced a narcotic influence;" that, having taken it, it would take some time to sleep it off, and that he would still smell of the brandy. The druggist, Mr. Arfort, also testified that the relator went to his store, met there Dr. Hilton, who prescribed for him, and that the doctor wrote two prescriptions, which he put up for the relator — four ounces of mixture in one bottle and one ounce in another; and this was the case which was presented to the commissioners for their consideration. It is kindred to the case of the *People ex rel. Michael Brady* v. *French* (reported in 11 State Reporter, 577). In that case it appeared that the relator was taken sick and resorted to stimulants for relief, which was not denied, and which the court considered, in that case, sufficient to account for his condition, overcoming the evidence which was offered for the pur-

pose of showing that he was guilty of conduct unbecoming an officer; and the proposition suggested and maintained by the court was that, to determine the truth of the charge, it was to be considered that he did not voluntarily place himself in the condition in which the use of the stimulant placed him; that it was his misfortune, rather than his fault; that he was assailed by disease, when it was entirely proper that something should be done for him in the way of providing a remedial agent, and that provided by his friend was considered to be what was required under these circumstances. And in view of the rule that there must be, upon all the evidence, such a preponderance of proof as to the material facts that the verdict of a jury would be set aside as against the weight of evidence, it was suggested that the misconduct did not tend to establish the charge made of voluntary intoxication, but proved him to have been subjected to illness requiring the aid of stimulants, resulting from no misconduct on his part, and, therefore, the judgment of the commissioners was reversed. Here that decision would be followed were it not for the recent adjudication made in the case of the *People ex rel. Masterson* v. *French* (decided October 2, 1888.\*) That was a kindred case to this, only that the evidence was not quite so strong to prove the immediate necessity of resort to stimulants; but there was sufficient to establish the fact that the relator took brandy and ginger for illness, and there was no evidence to the contrary. This court thought the facts and circumstances detailed in the evidence in that proceeding to be such as to warrant the reversal of the judgment of the commissioners; but the Court of Appeals held, in reversing our decision, that, conceding the existence of an ailment on the part of the relator, it afforded no justification for his conduct. The proof, such as is given on the part of the relator, established no extenuating circumstances in mitigation of the punishment which he had incurred by reason of his offense, and which would present a question pertaining solely to the general government and discipline of the force; and hence, from the nature of things, rests wholly within the discretion of the commissioners, not presenting any conflict of evidence which would invoke the rule authorizing the General Term to set aside the judgment as one against the weight of evidence.

---

PEOPLE ex rel. FAIRFIELD CHEM. CO. *v.* COLEMAN. 93

First Department, March Term, 1889.

To this exposition of the law by the Court of Appeals we bow and affirm the judgment, and, as a necessary consequence, dismiss the writ, but without costs.

Van Brunt, P. J., and Daniels, J., concurred.

Judgment affirmed and writ dismissed, without costs.